## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** § | | |
| **Gerald S. Wade and Georgianna Wade,** § | **Case No. 04-31004** | |
| **Debtors.** § | **(Chapter 13)** | |
| § | | |

| | | |
|---|---|---|
| § | | |
| **Gerald S. Wade and Georgianna Wade,** § | | |
| **Plaintiffs,** § | | |
| § | | |
| **v.** § | **Adversary No. 04-03550** | |
| § | | |
| **The United States of America Internal** § | | |
| **Revenue Service,** § | | |
| **Defendant.** § | | |

### MEMORANDUM OPINION

On January 16, 2004, Gerald and Georgianna Wade filed a joint petition for relief under chapter 13 of the Bankruptcy Code. The Wades initiated this adversary proceeding on July 19, 2004. In this adversary proceeding, the Wades request the Court: (i) void a federal tax lien, (ii) award damages for the Internal Revenue Service's violation of 11 U.S.C. § 362, and (iii) determine the amount of tax liability for 1994, 1995 and 1997. The Court conducted evidentiary hearings on these issues on March 24, 2005 and June 7, 2005. The following Memorandum Opinion sets forth the findings and conclusions for the Court's decision on the issues of whether to void the federal tax lien and award damages for violation of § 362.[1]

---

[1] At the June 7, 2005 trial, the Internal Revenue Service announced that it had amended its proof of claim and reduced the alleged debt from over $338,000.00 to approximately $11,000.00. Based on this representation, the parties did not present evidence on the amount of remaining tax debt. Despite this announcement, the Internal Revenue Service did not file an amended proof of claim. Accordingly, the Court conducted a status conference on July 28, 2005 to determine the status of Internal Revenue Service's proof of claim. At this status conference, the Internal Revenue Service announced that it intended to rely on its filed proof of claim. The Wades indicated that they would object to any such attempt. Accordingly, this Memorandum Opinion does not address the amount of the Wades' tax liability.

## Background

On March 4, 1996, Mr. Wade filed a petition for relief under chapter 13 of the Bankruptcy Code.[2] Ms. Wade was not a party to the 1996 proceeding. At that time, the Wades resided at 3914 West Hampton (the "West Hampton Property"). During the 1996 bankruptcy proceeding, the Internal Revenue Service (the "Service") filed a proof of claim against Mr. Wade and engaged in various collection activities against Ms. Wade for amounts due from 1994 and 1995. Specifically, the Service sent a Notice of Assessment and Demand for Payment, and a Notice of Intent to Levy. After these notices were sent, Ms. Wade went to the Service's office to address the delinquent tax issue. However, when Ms. Wade inquired about the Notice of Intent to Levy, she was told that no back taxes were owed. In fact, the tax obligation was still owed but the Service inadvertently gave her incorrect information. After Ms. Wade made this inquiry, the Service filed a Notice of Federal Tax Lien on the West Hampton Property in the Harris County real property records. This action was taken while Mr. Wade's bankruptcy was still pending. Mr. Wade received a discharge on June 15, 2001. The Service alleges that Ms. Wade is estopped from complaining about the imposition of the lien because a diligent individual would have investigated the existence of the lien after receiving the Service's notice. The Service cannot prevail on a claim that Ms. Wade's conduct—in relying on information provide by the Service— was less than diligent.

After Mr. Wade completed his plan and received a discharge, the Wades purchased a piece of property in Rosharon, Texas (the "Rosharon Property"). The Wades purchased the Rosharon Property with the intent of selling the West Hampton Property and using the proceeds to build a permanent residence on the Rosharon Property. In furtherance of this intent, the

---

[2] Case no. 96-41902.

2

Wades began renting the West Hampton Property to Mr. Wade's brother in October of 2002. The Wades would have preferred to immediately sell the West Hampton Property to him, but because of his credit history and lack of funds, Mr. Wade's brother was unable to immediately purchase the property. Accordingly, the Wades rented the West Hampton Property to Mr. Wade's brother for $650.00 per-month. Of this amount, $325.00 was to be paid in cash and $325.00 was to be retained by Mr. Wade's brother in a fund for making the down payment on the house. Mr. Wade testified that the fair market rental value of the West Hampton Property was $859.00 per-month.

In May of 2003, the Wades agreed to sell the West Hampton Property to Mr. Wade's brother for $70,000.00. At the closing on the West Hampton Property, the Wades and Mr. Wade's brother learned about the tax lien. Because of the lien, the closing failed and Mr. Wade's brother vacated the house and stopped paying rent.

At this point, the West Hampton Property required substantial repairs.[3] Due to damage caused by the tenants, and the necessary removal of an above ground pool, the Wades incurred $1,000.00 in costs to recondition and repair the house. The West Hampton Property sat vacant for ten-months because the Wades were afraid to invest more funds into a property that was subject to being foreclosed.

On January 16, 2004, the Wades filed the instant bankruptcy case. The primary purpose of this bankruptcy was to deal with the Service's claim against them and the lien against the West Hampton Property. During the bankruptcy, the Wades began renting the Rosharon Property to Mr. Wade's sister and moved back into the West Hampton Property.

---

[3] Evidence was offered that Mr. Wade's brother and his children caused extensive damage to the West Hampton Property.

In total, Ms. Wade has missed a total of nine days of work—for which she was not compensated—to attend the failed closing, meetings with the Service, and hearings before this Court. The Court finds that these absences resulted in $1,276.00 of lost wages. No evidence was offered regarding whether Mr. Wade was employed during this period. Ms. Wade testified that her husband has been disabled since 1999. The Court finds that Mr. Wade did not incur any lost wages. The Wades have also incurred attorneys' fees and costs of $23,966.50 in prosecuting this bankruptcy and adversary proceeding.

The effect of the tax lien has had more than a monetary effect on the Wades. Since the outset, the Wades have disputed the amount claimed by the Service. Accordingly, they felt powerless when they learned of the lien and blamed one another for the tax problems. The lien also kept the Wade's from being able to sell the West Hampton Property and build a house on the Rosharon Property. This forced them to live in a trailer for longer than expected. These events stressed the Wades' marriage. The tax problems led to substantial marital discord. At one point, the discord caused Ms. Wade to move out for two weeks. This discord continues.

When the Wades' current bankruptcy case was filed, they scheduled the value of the West Hampton property at $60,000.00. The Service has not contested this value.

### Analysis

"When a bankruptcy case is filed, section 362 of the Bankruptcy Code automatically and immediately imposes a statutory stay of the enforcement of any judgment obtained before the commencement of the case and a stay of any act to enforce any lien against property of the estate." *In re Pierce*, 272 B.R. 198, 203 (Bankr. S.D. Tex. 2001). Specifically, § 362(a)(4) stays "any act to create, perfect, or enforce any lien against *property of the estate*." 11 U.S.C. § 362(a)(4) (emphasis added). Section 541(a) further defines property of the estate as "all legal

or equitable interests of the debtor in property as of the commencement of the case." The Service argues that a postpetition filing of a federal tax lien against property of the estate is not a violation of the automatic stay where the underlying debt was incurred by a non-debtor. It is undisputed that the West Hampton Property was property of the estate in Mr. Wade's prior case and that the tax lien was filed while Mr. Wade's prior bankruptcy was pending. Accordingly, the Court concludes that the Service's tax lien created and perfected a lien against property of the estate in violation of § 362(a)(4) in Mr. Wade's prior bankruptcy case. [4]

Based on this violation, the Court must now determine whether the Service's tax lien on the West Hampton Property is effective. Under Fifth Circuit precedent, an act taken in violation of the stay is voidable. *See Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989).

> While "voidable" appears to mean valid subject to being made invalid, it actually stands for the proposition that acts are invalid subject to subsequent validation. This distinction was endorsed by the Fifth Circuit's 1989 decision in *Sikes v. Global Marine, Inc.*, 881 F.2d 176 (5th Cir. 1989). In *Sikes*, the court held that actions violative of the automatic stay are voidable, not void. In so holding, the court was simply using the correct terminology to indicate that, under some circumstances (like a bankruptcy court granting retroactive relief from the stay), an act that was originally null could be rendered valid by judicial act. *Id.* at 178. Where an action is violative of the stay and the action is not annulled, the "violation of the stay (is void), of no effect, and incurable." *In re Pierce*, 272 B.R. at 206 n. 16 (interpreting *Sikes*, 881 F.2d at 176). "And '[a]lthough it can be made valid by retroactive relief from the [automatic] stay, no one has a right to rely on the transaction until and unless it is validated by court action.'" *Cueva*, at 236-37 (quoting *Pierce*, at 208).

*In re Edwin A. Epstein, Jr. Operating Co., Inc.*, 314 B.R. 591, 602 (Bankr. S.D. Tex. 2004).

---

[4] The Court notes that § 362(b)(9) provides an exception to the automatic stay for, "(A) an audit by a governmental unit to determine tax liability; (B) the issuance to the debtor by a governmental unit of a notice of tax deficiency; (C) a demand for tax returns; or (D) the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor). 11 U.S.C. § 362(b)(9). Thus, despite the fact that some of the Service's actions were excepted from the stay, the filing of the tax lien in the real property records was not.

5

Pursuant to § 362(d)(1), the Service requests that the Court annul the automatic stay to render its actions valid. *In re Cueva*, 371 F.3d 232, 236 (5th Cir. 2004). However, the Court may only annul the stay for cause. 11 U.S.C. § 362(d). The Service argues that cause exists to annul the stay based on the equitable doctrine of *laches*. The defense of *laches* consists of three elements: "(1) a delay on the part of the plaintiff in instituting suit; (2) that is not excused; and (3) that results in undue prejudice to the defendant's ability to present an adequate defense." *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 708 (5th Cir. 1994) (citing *Geyen v. Marsh*, 775 F.2d 1303, 1310 (5th Cir. 1985)). As discussed above, the Wades attempted to resolve their tax issues with the Service prior to the lien being filed and were told that there was no deficiency. Understandably, the Wades believed the matter was resolved until they learned of the tax lien when they attempted to close on the sale of their home in 2003. Accordingly, the Court concludes that the Wades did not wait an unreasonable time to bring this action. Thus, the lawsuit is not barred by the equitable doctrine of *laches*, and there is no cause to annul the stay. Consequently, the Service's lien is void and of no effect.

Having found the stay violated, the Court must now determine whether the violation was "willful" pursuant to § 362(h). The Service argues its stay violation was not "willful" because it possessed a good faith belief that its actions did not violate the stay. Courts in the Southern District hold, "[a] willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition." *Mitchell v. BankIllinois*, 316 B.R. 891, 901 (S.D. Tex. 2004); *see also Fleet Mortgage Group, Inc. v. Kanev*, 196 F.3d 265 (1st Cir. 1999); *In re Lansdale Family Rests., Inc.*, 977 F.2d 826, 829 (3d Cir. 1992) (holding an act done intentionally with knowledge that bankruptcy petition has been filed is willful violation of stay). It is undisputed that the Service had knowledge of Mr. Wade's prior case because the Service

affirmatively participated in the case by filing a proof of claim. Accordingly, this Court finds that the Service committed a willful violation of the stay by engaging in the deliberate act of filing a tax lien in the real property records of Harris County after receiving notice of Mr. Wade's case.

Arguing against this definition of "willful," the Service directs the Court to the Fifth Circuit's opinion in *See In re Sherk*, 918 F.2d 1170 (5th Cir. 1990) *abrogated on other grounds by Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992). The Service claims that *Sherk* stands for the proposition that a violation of stay is not willful when the offending party has a good faith belief that their actions did not violate the stay. *See In re Sherk*, 918 F.2d at 1178. In *Sherk*, the Fifth Circuit was faced with whether the district court should have sanctioned a party—*inter alia*—under 11 U.S.C. § 362(h). *Id.* Therefore, the Court was determining whether there was sufficient authority to impose discretionary sanctions for a willful violation of the stay and not the mandatory damages set forth by § 362(h). Accordingly, *Sherk* is not analogous to the present case.[5]

The Service further alleges that the Court lacks jurisdiction pursuant to 11 U.S.C. § 350(b). Essentially, the service argues that Mr. Wade's prior bankruptcy must be reopened— pursuant to §350(b)—to litigate a violation of the stay in that case. Section 350(b) states, "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). While a Court may allow the reopening of a closed bankruptcy case under § 350(b), such an action is not a jurisdictional requirement. *In re Leach*, 194 B.R. 812, 815 (E.D. Mich. 1996). "Indeed, [t]he effect of [11 U.S.C. § 350(b)] is merely to resurrect the court file from the stacks of the closed cases, or even

---

[5] Despite this conclusion, even if the Court were to accept the premise that a good faith exception exists to a willful violation of the automatic stay, the Court does not understand how any party that participates in bankruptcy proceedings as frequently as the Service could possess a good faith belief that filing a lien against property of the estate—regardless of who incurred the debt—could ever be considered permissible under § 362(a)(4).

from the archives, to enable it to receive a new request for relief." *In re Petroleum Prod. Mmt., Inc.*, 282 B.R. 9, 14-15 (B.A.P. 10th Cir. 2002) (quoting *Leach*, 194 B.R. at 815 (quoting *In re David*, 106 B.R. 126, 128 (Bankr. E.D. Mich. 1989)) (internal quotations omitted).

As a general matter, bankruptcy jurisdiction is conferred by 28 U.S.C. § 1334. This statute, along with this district's general order of reference, vests the Court with jurisdiction to adjudicate any disputes arising under Title 11. 28 U.S.C. § 1334(b). It is undisputed that the present action arises under Title 11. *See In re Albion Disposal, Inc.*, 217 B.R. 394, 411 (W.D. N.Y. 1997) ("[t]he plaintiffs' automatic stay claim is unquestionably a core proceeding because it arises under Title 11...."). The Court cannot facially discern why it would not have jurisdiction over the present cause of action. Consequently, the Court concludes that the Service's objection, though termed jurisdictional, is more properly a procedural objection. *See Armstrong v. Capshaw, Goss & Bowers*, 404 F.3d 933 (5th Cir. 2005) (noting district courts must determine the true nature of a pleading by its substance, rather than its labels) (citing *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (*en banc*) ("[W]e have oft stated that 'the relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label'") (quoting *Bros., Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 606 (5th Cir. 1963)). The Service's procedural objection was only made after a full trial on the merits. Accordingly, the Court finds that the Service's objection has been waived. *In re Leach*, 194 B.R. at 815 ("[b]eing a mere procedural requirement, the Court finds that a challenge to a party's failure to reopen a case can be waived."). Accordingly, the Court concludes that it

has subject matter jurisdiction and that any objection based on the Wade's failure to request the

prior case be reopened is waived.[6]

The Service next argues that the Wades are not entitled to attorneys' fees and costs

because the Wades have not complied with 26 U.S.C. §§ 7433(e) and 7430. Section 7433(e)

states:

> (e) Actions for violations of certain bankruptcy procedures.--
> (1) In general.--If, in connection with any collection of Federal tax with respect to
> a taxpayer, any officer or employee of the Internal Revenue Service <u>willfully
> violates</u> any provision of section 362 (relating to automatic stay) or 524 (relating
> to effect of discharge) of title 11, United States Code (or any successor provision),
> or any regulation promulgated under such provision, such taxpayer may petition
> the bankruptcy court to recover damages against the United States.
> (2) Remedy to be exclusive.--
> (A) In general.--Except as provided in subparagraph (B), notwithstanding section
> 105 of such title 11, such petition shall be the exclusive remedy for recovering
> damages resulting from such actions.
> (B) Certain other actions permitted.--Subparagraph (A) shall not apply to an
> action under section <u>362(h)</u> of such title 11 for a violation of a stay provided by
> section 362 of such title; except that--
> (i) Administrative and litigation costs in connection with such an action may only
> be awarded under section 7430; and
> (ii) Administrative costs may be awarded only if incurred on or after the date that
> the bankruptcy petition is filed.

26 U.S.C. § 7433(e) (emphasis added). Section 7433(e) arguably requires a debtor to comply

with the administrative procedures set forth under § 7430 before he or she may recover fees and

costs for a willful violation of the stay.[7] If sovereign immunity has not been waived, the

---

[6] As the Service forthrightly notes, actions for violations of the automatic stay may be enforced even after the
bankruptcy proceedings have been terminated. *Price v. Rochford*, 947 F.2d 829, 831 (7th Cir. 1991). Accordingly,
even if a motion to reopen the case had been denied, the action could have been properly brought before this Court.
[7] The Court reaches no conclusion on whether § 7433(e) actually requires compliance with § 7430 because of the
internal inconsistency within § 7433(e). Based on the plain language of subsections (1) and (2)(A), a debtor is
required to petition the bankruptcy court for any willful violation of § 362. Subsection (2)(b) however, further
mandates that any plaintiff seeking a remedy for a violation of § 362(h)—the very section of the Bankruptcy Code
that provides a cause of action for a willful violation of the stay—must first exhaust administrative procedures.
Therefore, § 7433(e) appears to require inconsistent action by the debtor. Because it does not affect the Court's
decision in this case, the Court will not attempt to determine the true effect of the statute's inconsistency, but rather
assumes that § 7433(e) requires compliance with the administrative procedures set out in § 7430.

administrative procedures in 26 U.S.C. §§ 7433(e) and 7430 are prerequisites that a claimant must follow before filing an action. As such, they could condition a taxpayer's ability to seek redress from the government and are thus a limited or conditional waiver of sovereign immunity. *See, e.g., McNeil v. United States*, 113 S.Ct. 1980 (1993); *Wyler v. United States*, 725 F.2d 156, 159 (2d Cir. 1983) ("Absent compliance with the [Federal Tort Claims Act] requirements [regarding filing a timely administrative claim] the action is barred by sovereign immunity and the district court had no subject matter jurisdiction."); *Free v. U.S.*, 885 F.2d 840 (11th Cir. 1989); *Bukala v. United States*, 854 F.2d 201 (7th Cir. 1988).

The principle of sovereign immunity requires the United States to consent to such suit through a waiver of its sovereign immunity. *See, e.g., Block v. North Dakota*, 461 U.S. 273, 280 (1983); *United States v. Mitchell*, 445 U.S. 535, 538 (1980). "The natural consequence of the sovereign immunity principle is that the absence of consent by the United States is a fundamental defect that deprives the district court of subject matter jurisdiction." WRIGHT, MILLER, & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3d § 3654 (footnotes omitted). Further, only Congress can waive the United States' sovereign immunity, and such waivers are to be construed strictly. *See United States v. Sherwood*, 312 U.S. 584, 587 (1941).

Despite § 7433(e)'s limited waiver of sovereign immunity, § 106 of Title 11 provides two distinct waivers. The first is a partial waiver and the second is a complete waiver. Section 106 states:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
> (1) Sections ... 106 ... [and] 362 ... of this title.
> (2) The court may hear and determine *any issue* arising with respect to the application of such sections to governmental units.
> (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure,

including an order or judgment *awarding a money recovery*, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be *consistent with appropriate nonbankruptcy law applicable to such governmental unit* and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

(c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

11 U.S.C. § 106 (emphasis added).

Under § 106(a), the government has partially waived sovereign immunity for a variety of actions related to specific Bankruptcy Code sections, including § 362(h). This partial waiver, however, is conditioned on compliance with "appropriate non-bankruptcy law." 11 U.S.C. § 106(a)(4). In addition to this limited waiver contained in § 106(a), the Bankruptcy Code provides a separate and complete waiver of sovereign immunity in § 106(b). Under § 106(b), sovereign immunity is completely waived if the following three conditions are met: (i) the governmental unit must file a formal proof of claim, (ii) the cause of action must arise "out of the same transaction or occurrence," and (iii) the cause of action must be property of the estate. 11 U.S.C. § 106(b).

In this case, the government has filed a formal proof of claim. Further, the cause of action arises under the same transaction or occurrence because the tax liability is both the basis for the Service's claim and the basis for the tax lien that violated § 362. Finally, the cause of

action is property of the estate pursuant to § 541 because the cause of action existed before the

present bankruptcy was filed. Therefore, the Court finds that § 106(b) affects a complete

waiver of the Service's sovereign immunity defense to the Wades' cause of action.

Based on this conclusion, the Court must determine whether § 106(b)'s complete waiver

of sovereign immunity excused the Plaintiffs from complying with §§ 7433 and 7430's

administrative procedures before recovering attorneys' fees.

The Court is mindful that waivers of sovereign immunity must be expressed

unequivocally and must be strictly construed. *Ruckleshause v. Sierra Club*, 463 U.S. 680, 685,

(1983); *Mitchell*, 445 U.S. at 538. The Court further recognizes jurisdiction is limited by the

express language of the consent, which may be limited and conditioned. *See Mitchell*, 445 U.S.

at 538; *Honda v. Clark*, 386 U.S. 484, 501 (1967); *Hutchinson v. United States*, 677 F.2d 1322,

1327 (9th Cir. 1982); *Payne v. Panama Canal Co.*, 607 F.2d 155, 163 (5th Cir. 1979) (Congress

can impose a condition that claims be brought in a specific manner); *Genson v. Ripley*, 544 F.

Supp. 251, 252 (D.C. Ariz. 1981), *aff'd*, 681 F.2d 1240, 1241 (9th Cir. 1982), *cert denied*, 459

U.S. 937 (1982) (administrative remedies must be exhausted before federal court jurisdiction

exists). Despite these guideposts, § 106(b) and § 7433(e) could be interpreted to conflict as to

the extent of the government's waiver of sovereign immunity where both § 106(b) and § 7433

facially apply. Specifically, § 106(b) unambiguously waives sovereign immunity—when certain

prerequisites are met—while § 7433(e) expressly conditions such waiver in the same situations.

Thus, the Court must determine whether the provisions of Title 11 or the provisions of Title 26

control the present action.

When engaging in any form of statutory interpretation, the Court must begin with the

plain language of the statute itself. *See United States v. Ron Pair*, 489 U.S. 235, 240 (1989).

However, when the court is interpreting multiple statutes that address the same subject matter, the court must additionally attempt to construe the statutes harmoniously to the greatest extent possible. *Bates v. Nicholson*, 398 F.3d 1355, 1365 (Fed. Cir. 2005) (when statutes are capable of co-existence, it is the duty of the court to regard each as effective). Thus, the court must read the statues in such a way to avoid potential conflict. *In re Komet*, 104 B.R. 799, 815 (Bankr. W.D. Tex. 1989). If such a reading is not possible, then the court must decide upon a resolution that will do the most to serve the congressional intent impressed upon both statutes. *In re Fonke*, 321 B.R. 199, 207 (Bankr. S.D. Tex. 2005) (stating that in the absence of the ability to harmonize conflicting statutes, the court must determine which statute should prevail).

Section 7433(e) was enacted after § 106(b)'s present version. Thus, while the Court presumes Congress drafted § 7433(e) in light of § 106(b), there is no evidence—either in the statute or the legislative history—to indicate that Congress intended to modify the broad waiver of sovereign immunity set forth in § 106(b). Instead, it appears that Congress was attempting to address situations in which § 106(b) was inapplicable—*i.e.* where the government had not filed a proof of claim and the plaintiff brought an action under a section enumerated by §106(a)(1). Indeed, §§ 7433(e) and 7430 appear to be an "applicable nonbankruptcy law" to which § 106(a)(4) requires a plaintiff to adhere.

Further, reading §§ 7433 and 7430 to apply in situations governed by § 106(a) rather than § 106(b) imports a logical coherence to the statutes. Section 106(a) applies to select sections of the Bankruptcy Code in which the government has not filed a proof of claim while § 106(b) applies where the government has taken an active role in the case by filing a proof of claim. The distinction between the subsections is a strong indication that Congress was concerned that the government might incur liability without having actual knowledge of the case. This presumption

13

is furthered by § 106(b)'s requirement that the proof of claim and the cause of action arise out of some common nexus. This tends to ensure not only that the government has actual notice, but that the same unit of the government that is alleged to have violated the Bankruptcy Code has actively participated in the case by filing a proof of claim. Based on this reasoning, the Court concludes that §§ 7433 and 7430 of Title 26 do not apply to a situation where sovereign immunity is waived under § 106(b). The Court notes that this result is consistent with the underlying policy (that the filing of a proof of claim in a bankruptcy case subjects the claimant to the remedies available in a bankruptcy court) set forth in *Langenkamp v. Culp*, 498 U.S. 42 (1990) and *Katchen v. Landy*, 382 U.S. 323 (1966). Accordingly, the Court concludes that the Wades may recover attorneys' fees. The Court now turns its attention to the specific damages requested by the Wade's.

Pursuant to § 362(h), "an individual injured by any willful violation of the automatic stay shall recover actual damages, including costs and attorneys' fees ...." Under the umbrella of actual damages, the Wades request damages in the form of costs and attorneys' fees, emotional distress, lost wages, lost rent, property damage, and lost opportunity damages. Before discussing each facet of the Wades' alleged damages, the Court must first address whether Ms. Wade's damages are compensable under § 362(h).

Generally, "[t]he automatic stay does not afford protection or relief for the Debtor's family or their property." *In re Dawson* 390 F3d 1139, 1150 (9th Cir. 2004) (stating wife's damages were non-compensable for violation of stay in husband's prior bankruptcy case); *In re Siskin*, 231 B.R. 514, 519 (Bankr. E.D.N.Y. 1999) (holding that non-debtor spouse lacked standing to assert a claim under section 362(h) for violation of the automatic stay); *see also In re Kizelnik*, 190 B.R. 171, 179 (Bankr. S.D.N.Y. 1995) (mortgagor's granddaughter lacked standing

to invoke automatic stay). However, the automatic stay does protect property of the debtor. 11 U.S.C. § 362(a).

Under Texas community property law, lost wages of a spouse are community property. *Slaton v. Slaton*, 987 S.W.2d 180, 182-83 (Tex. App.—Houston [14th Dist.] 1999, *pet. denied*); *Osborn v. Osborn*, 961 S.W.2d 408, 414 (Tex. App.—Houston [1st Dist.] 1997, *reh'g of pet. for rev. overruled*). The Bankruptcy Code explicitly includes most community property as property of the estate. 11 U.S.C. § 541. Based on the evidence before the Court, the lost wages were qualifying community property under §§ 541(a)(2)(A) and 541(a)(2)(B) of the Bankruptcy Code. Accordingly, damages caused by a violation of the automatic stay are recoverable as damages by the debtor. Therefore, Ms. Wade's damages for lost income are properly recoverable by Mr. Wade.

In addition to seeking to recover her lost wages, Ms. Wade also seeks to recover for her mental distress and anguish. Texas law defines emotional distress as a personal injury. *See Whittlesey v. Miller*, 572 S.W.2d 665, 669 (Tex. 1978) (holding recovery for the personal injuries of a spouse, including damages to emotional interests, are the separate property of that spouse.). Texas law further defines separate property *inter alia* as "the recovery for personal injuries sustained by the spouse during marriage...." TEX. FAM. CODE § 31.003(3) (Vernon 1997). Accordingly, under Texas law, Ms. Wade's damages for emotional distress are properly classified as separate property. As such, Mr. Wade cannot recover for them.

Turning to the alleged damages, the Court first addresses the Wades' request for costs and attorneys' fees. Section 362(h) includes "costs and attorneys' fees" as a portion of the mandatory fee award for a willful violation of the automatic stay. Despite the mandatory nature of the award, it is the debtor's burden to prove that the claimed costs and attorneys' fees were

reasonable and necessary. *See Mitchell v. BankIllinois*, 316 B.R. at 902. At the trial on this matter, the Wades' attorney testified solely as a fact witness as to the time his office spent and costs incurred in prosecuting this matter and the Wades' underlying bankruptcy case. No evidence was offered as to the reasonableness or necessity of the attorneys' fees. Thus, the Court must determine whether it may award attorneys' fees despite the Wades lack of evidence. The Court finds that it may.

> "A judge is presumed knowledgeable as to the fees charged by attorneys in general and as to the quality of legal work presented to him by a particular attorney; these presumptions obviate the need for expert testimony such as might establish the value of services rendered by doctors or engineers." *Lindy Bros. Bldrs., Inc. of Phila. v. American R. & S. San. Corp.*, 487 F.2d 161, 169 (3rd Cir. 1973). In sum, judges are empowered to take judicial notice of the prevailing fees charged within their jurisdiction.

*In re Cambern*, 134 B.R. 565, 571 (Bankr. E.D. Tex. 1991).

Based on this Court's familiarity with the attorneys' fees and quality of work in this district, the Court takes judicial notice—pursuant to FED. R. EVID. 201—and finds that the fees incurred in both the main case and adversary proceeding were reasonable and necessary. The Court notes that this amount includes the fees for both the adversary proceeding and the main case matters. The fees for both matters are recoverable because the tax lien was the primary cause for the instant bankruptcy filing. Indeed, the Court finds that the Wades would not have filed this bankruptcy and adversary proceeding if the tax lien had not been filed in violation of the stay. Accordingly, the Court awards the full amount requested.

The Court next analyzes the Wades' damages surrounding the West Hampton Property. The Wades request the Court award damages for: (i) the "lost opportunity" to build on the Rosharon Property, (ii) the lost rental income, and damages to the West Hampton Property, and (iii) Ms. Wade's lost wages. The lost opportunity damages include the increase in costs—from

16

2003 to 2005—to build a house on the Rosharon Property and the increased cost for credit due to their bankruptcy. The Court finds that this lost opportunity is too speculative to justify a damages award. The inability to build the Rosharon home did cause mental anguish—and that is compensable. But, the economic losses attributable to the Rosharon property are too uncertain to justify an award. *See Connecticut Ry & Lighting Co. v. Palmer*, 305 U.S. 493, 505 (1939) (stating, "[m]ere 'plausible anticipation' does not merit consideration nor are flights into the realm of pure speculation entitled to be treated as evidence. The determination of the amount to be allowed as the damage will be based on evidence which satisfies the mind."); *Richter, S.A. v. Bank of Am. Nat. Trust & Sav. Ass'n*, 939 F.2d 1176, 1188 (5th Cir. 1991) ("damages must be established with a reasonable degree of certainty; there can be no recovery for damages which are speculative in nature and/or conjectural."). The Wades offered no meaningful evidence regarding any attempts to begin the construction process on the Rosharon Property, their ability to finance the construction, or the fair market value of the Rosharon Property if it had been completed. Therefore, the Court cannot ascertain the Wades' damages in this regard with any reasonable certainty. Accordingly, the Court denies the lost opportunity damages related to the Rosharon Property.

The Wades also seek damages for lost rent[8] on the West Hampton Property and damage to the property. As discussed above, Mr. Wade's brother vacated the West Hampton Property after discovering the tax lien. He discovered the lien at the closing. Accordingly, awarding damages for *both* the lost sale and the lost rent would double-count the damages suffered by the

---

[8] Mr. Wade testified that the fair market rental value of the house was $859.00 dollars. Despite this conclusory testimony, Mr. Wade rented the house to his brother for $650.00. Mr. Wade offered no other evidence of the rental value (*i.e.* comparative properties or testimony from a rental broker). The Court finds the price Mr. Wade actually rented the property to be more persuasive than the amount testified. Accordingly, the Court finds the fair market rental value to be $650.00 per-month. In any event, for the following reason, no damages are awarded for the lost rent.

Wades. Because the closing—at which the Wades would have been able to sell the house for $10,000 more than its value at the petition date—did not occur, the Wades should be awarded $10,000.[9] The Court finds that this loss would not have occurred "but for" the filing of the tax lien. When Mr. Wade's brother vacated the house, the house required substantial repairs in order to return the property to its fair market value. Although the Court questions whether damages caused by Mr. Wade's brother are compensable, the Court finds that any such damages have been encompassed in the $10,000 award listed above. Accordingly, the Court need not address whether damages caused by Mr. Wade's brother would have been compensable without the $10,000 award.

The Court next turns to the issue of whether Mr. Wade[10] may recover emotional distress damages as part of the mandatory award of actual damages under § 362(h). Generally, courts analyze whether emotional distress damages should be awarded by evaluating each claim on a case-by-case basis. The majority of courts have denied damages for emotional distress when there is no medical or other tangible evidence to show something more than a fleeting, inconsequential, or medically insignificant injury. *See, e.g., Crispell v. Landmark Bank*, 73 B.R. 375, 380 (Bankr. E. D. Mo. 1987); *In re Diviney*, 211 B.R. 951 (Bankr. N.D. Okla. 1997); *see also In re Daniels*, 316 B.R. 342, 355 (Bankr. D. Idaho 2004) (awarding no emotional damages based on a lack of competent evidence of debtor's health suffering and debtor's insignificant economic loss). Despite this general jurisprudence, courts have developed more specific— though varying—evidentiary burdens for awarding emotional distress damages for violations of

---

[9]  Other evidence also establishes that the $10,000 is an appropriate measure of the Wades' damages. Following the failed closing, the home was neither rented nor occupied for nearly a year. Substantial renovation was required to restore the home to fair value; the time lost in selling the home was never recovered. Accordingly, whether based on the schedules or on the other evidence adduced at trial, the Court finds that $10,000 is a fair measure of the Wades' damages.

[10] As discussed above, Ms. Wade's emotional distress damages are non-compensable.

§ 362(h). Specifically, the First, Seventh, and Ninth Circuits have uniformly held that emotional distress damages are compensable as actual damages, though each circuit requires a different standard of proof. In the First Circuit, emotional damages qualify as actual damages under § 362(h) as long as there is specific information about the emotional harm rather than a mere generalized assertion. *Fleet Mortg. Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999) (finding sufficient evidence of a debtor's claim of emotional harm based on debtor's testimony of his psychological suffering). The Seventh Circuit likewise holds that emotional distress damages are recoverable if the debtor has also suffered a financial loss in which the emotional distress damages would qualify as incidental damages. *In re Aiello*, 239 F.3d 876, 880 (7th Cir. 2001). The Ninth Circuit allows recovery if the debtor: (1) suffered significant harm, (2) clearly established the significant harm, and (3) demonstrated a causal connection between that significant harm and the violation of the automatic stay. *In re Dawson*, 390 F3d at 1149. The Fifth Circuit has not addressed this issue. As explained below, the Court concludes that the Wades satisfied all of the announced standards for an award of emotional distress damages in the discussed circuits.

The Wades intended to sell the West Hampton Property and utilize the proceeds to build a new house on the Rosharon Property. Because of the tax lien, this was not possible. Unable to sell the West Hampton Property, the Wades moved back into—and reconditioned—the West Hampton Property. Further, the Wades were unable to resolve their tax issues without filing the instant bankruptcy case. These problems understandably led to stress in the Wades' marriage. This stress is evidenced by Ms. Wade leaving Mr. Wade for a period of two weeks. This tangible disruption to the marriage surpasses any mere fleeting or insignificant emotional distress. Further, the emotional distress is inextricably intertwined with the actual economic

19

damages the Wades suffered. Finally, the Court concludes that the harm caused by the lien to the marital estate was significant. Under such circumstances, the Court concludes that Mr. Wade has satisfied the burden of proof regardless of which test is used. Consequently, the Court concludes that an award of $5,000.00 is necessary to compensate Mr. Wade for the emotional distress caused by the Service's willful violation of the automatic stay.

Based on these findings and conclusions, the Wades have incurred $38,966.50 in damages. The Court notes that this award is subject to § 106(c)'s required set off. 11 U.S.C. § 106(c) ("[n]otwithstanding any assertion of sovereign immunity by a governmental unit, there shall be an off-set against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.") Accordingly, the award in this case must be reduced by any allowed claim of the Service. The Court will issue a separate judgment consistent with this opinion.

Signed at Houston, Texas on August 1, 2005.

**Marvin Isgur**
**UNITED STATES BANKRUPTCY JUDGE**